IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MICHAEL ALLEN PETTY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 3:21-cv-464-MHT-SMD |
| ) | CASE NO. 3:21-cv-552-MHT-SMD |
| ) | CASE NO. 3:21-cv-511-MHT-SMD |
| JUSTIN STANLEY, *et al.*, ) | CASE NO. 3:21-cv-522-MHT-SMD |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   Introduction**

Pro se prisoner Michael Allen Petty ("Petty") brings 42 U.S.C. § 1983 claims for excessive force, deliberate indifference, and denial of religiously appropriate food against Russell County Jail Corrections Officer Justin Stanley ("Office Stanley") and nine other Russell County corrections officers. Petty seeks damages for pain and suffering. Petty's claims all arise from a July 3, 2021, incident where Officer Stanley used force to extract Petty from his cell after he became agitated about receiving what he believed was a non-vegetarian meal. None of the other named defendants were involved in the cell extraction. Petty's claims are due to be dismissed because (1) he failed to exhaust Russell County's available administrative remedies prior to filing suit, and (2) because he has failed to show an Eighth Amendment or First Amendment violation.

**II.   Procedural Posture**

**A. Consolidation**,

Petty filed his first complaint related to the July 3rd incident on July 6, 2021.[1] *Petty v. Stanley, et al.*, Case No.: 3:21-cv-00464-WHA-SMD (Doc. 1). He filed a second lawsuit relating to the same incident on July 28, 2021. *Petty v. Russell County Jail, et al.*, Case No.: 3:21-cv-511-WHA-CSC (Doc. 1). Petty filed his third lawsuit on August 4, 2021, *Petty v. Russell County, et al.*, Case No.: 3:21-cv-522-WHA-CSC (Doc. 1), and his fourth on August 10, 2021, *Petty v. Sheriff Heath Taylor, et al.*, Case No.: 3:21-cv-552-WHA-CSC (Doc. 1). Petty's four lawsuits were consolidated under this lead case number, and Petty was ordered to file a more definite statement. (Docs. 15 & 16). Petty filed an amended complaint on September 22, 2021, and that is now the operative pleading in these consolidated cases. (Doc. 17).

### B. Special Report

Following this court's usual procedure in pro se prisoner cases, the undersigned ordered defendants to file a special report which they filed with supporting exhibits on February 22, 2022 (Doc. 38). The undersigned ordered Petty to respond (Doc. 42), and he filed his sworn response on March 15, 2022 (Doc. 47). The undersigned now converts defendants' special report to a motion to dismiss on the exhaustion defense and a motion for summary judgment on all other defenses.

### III. Legal Standard

#### A. Exhaustion

---

[1] Under the prison mailbox rule, the date of filing is the date a complaint was delivered to prison authorities for mailing to the clerk's office. *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). Absent contrary evidence, the court may assume this is the date the complaint was signed. *Id.*

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing suit. 42 U.S.C. § 1997e(a). Exhaustion is an affirmative defense that should be decided on a Rule 12(b) motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008). Exhaustion, like jurisdiction, venue, and service of process, is a matter in abatement and not an adjudication on the merits. *Id.* at 1375-76. Therefore, the court may consider facts outside the pleadings and resolve factual disputes concerning exhaustion that are unrelated to the merits when the parties have had an adequate opportunity to develop the record. *Id.*

### B. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When the non-moving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The legal elements of the plaintiff's claim dictate which facts are material and which are irrelevant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is not material if a dispute over that fact will not affect the outcome of the case under the governing law. *Id.* "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Celotex*, 477 U.S. at 331 (White, J., concurring).

The court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in the nonmovant's favor. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242-43 (11th Cir. 2001). However, a mere scintilla of evidence in support of a claim is insufficient; the nonmovant must produce sufficient evidence to enable a jury to rule in his favor. *Id.* at 1243. The Eleventh Circuit explains that "[s]imply put, the plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (internal quotes and citations omitted).

Although factual inferences must be drawn in favor of the non-moving party and pro se pleadings are entitled to a liberal interpretation, a litigant's pro se status does not allow him to escape the essential burden on summary judgment of establishing a genuine dispute concerning a material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). On summary judgment, a pro se plaintiff must still adduce evidence sufficient to establish the essential elements of his claims. *Id.*

### IV. Facts

On July 3, 2021, Officer Stanley was on duty at the Russell County Jail. Stanley Decl. (Doc. 38-11) ¶ 5; Amd. Compl. (Doc. 17) p. 3. He passed out dinner trays to the inmates, and Petty became upset that he received a non-vegetarian tray.[2] *Id.* Sometime

---

[2] Officer Stanley claims that he in fact gave Petty a vegetarian food tray, but this dispute is not material. Stanley Decl. (Doc. 38-11) ¶ 5.

4

later, Officer Stanley returned to the pod to pick up the food trays. Stanley Decl. (Doc. 38-11) ¶ 6; Amd. Compl. (Doc. 17) p. 4. He was the only officer in the pod. Stanley Decl. (Doc. 38-11) ¶ 6. Petty refused to give Officer Stanley his food tray because he wanted to show it to Sergeant Hood when he started his shift at 7:00 pm. Stanley Decl. (Doc. 38-11) ¶ 6; Amd. Compl. (Doc. 17) p. 4. Officer Stanley ordered Petty to step out of his cell so he could retrieve the food tray. *Id.* Petty complied and Officer Stanley entered the cell. *Id.* Petty then suddenly rushed back into the cell behind Officer Stanley. *Id.* Petty explains that he remembered he had a contraband water bag out, and he rushed into the cell behind Officer Stanley and stood between the toilet and the table to hide it. Amd. Compl. (Doc. 17) p. 4.

At this point, the stories diverge slightly. Petty alleges that Officer Stanley punched him in the left side of his head, slung him to his bed, slammed him to the floor face down, handcuffed him, and then dragged him out of the cell and kicked him in the legs. (Doc. 17) p. 4. Officer Stanley states that he "maneuvered Petty onto his bed, Petty tried to stand up, so I assisted him to the ground." (Doc. 38-11) ¶ 6. He then handcuffed Petty and removed him from his cell. *Id.* Petty's leg was in the way of the cell door shutting, so Officer Stanley used his foot to move Petty's leg so he could shut the door. *Id.* Officer Stanley states that he never punched Petty in the head or kicked his legs and "used the least amount of force necessary to gain control of the situation as I was the only officer in the pod at that time." *Id.* ¶¶ 7-8.

Video of the pod during the cell extraction shows Officer Stanley walking up to the cell door, Petty exiting the cell and standing near the door, and Officer Stanley entering the cell. Defs.' Ex. L, Video, Camera 5, 7/03/2021 at 17:18-17:20. Petty then rushes into the cell behind Officer Stanley while another large inmate stands near the cell door. *Id.* The actions inside the cell are not captured on the video. After a few moments, Officer Stanley is seen dragging Petty in handcuffs from the cell and placing him face down on the pod floor. *Id.* He uses a foot to move Petty's leg away from the cell door and closes the door. *Id.* Officer Logan then enters the pod, and they pick Petty up and walk him out of the pod.[3] *Id.*

## V. Petty's Claims

Petty alleges three claims in his amended complaint. (Doc. 17). Count One is an Eighth Amendment excessive force claim against Officer Stanley. (Doc. 17) pp. 2, 4. Count Two is a First Amendment claim against Officer Stanley for denial of a religiously appropriate diet. (Doc. 17) p. 3. Count Three is an Eighth Amendment claim for deliberate indifference to serious medical needs against Shift Sergeant Michael Thompson, Officer Reginald Logan, Corporal Jeremiah Shay, Officer Derrick Crawford, Officer Rashard Monigan, Corporal Brinson Harley, Shift Sergeant Shannon Johnson, Shift Sergeant William Hood, and Officer Roy Wright.

## VI. Discussion

---

[3] The court may consider facts clearly shown in video evidence at summary judgment. *Scott v. Harris*, 550 U.S. 372, 380-381 (2007).

A. **Petty has not Exhausted His Available Administrative Remedies.**

The PLRA mandates that inmates properly exhaust all available administrative remedies before filing suit. 42 U.S.C. § 1997e(a). Proper exhaustion requires the prisoner to complete the administrative review process in accordance with the prison grievance scheme's applicable procedural steps, timelines, and rules. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The prison's own rules and procedures governing grievances, not the PLRA, define the boundaries of proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015). When "the institution provides an administrative appeals process, prisoners must exhaust that process too." *Hacker v. Dart*, 62 F.4th 1073, 1078 (7th Cir. 2023); *see also Pavao v. Sims*, 679 F. App'x 819, 824 (11th Cir. 2017) (holding same).

The Russell County Jail's grievance procedure is published in its Handbook on Inmate Rules and Regulations (Revised Edition 2019) that is available in the jail's kiosk. (Doc. 38-16) p. 12. Russell County's grievance procedure provides that "[a]n inmate wishing to resolve a problem must submit an inmate grievance electronically within 15 days of the incident." *Id*. Inmates may file a grievance when, among other things, they have been subjected to a prohibited act by a staff member, abuse, or abridgement of civil rights. *Id.* Grievances "should include the date, time, names of all persons involved, and all pertinent details of the incident including the names of any witnesses." *Id.* Inmates who are not satisfied with the first answer to their grievance "may send an appeal to [the] next higher command level (Assistant Detention Director) within 15 days of the first

response." *Id.* Thereafter, they "may continue to send it through the chain of command, up to the sheriff, who will make the final decision on any appellate issues involving [the] grievance." *Id.*

The record here shows that Petty electronically filed grievances on July 6, 2021, and August 10, 2021. (Doc. 38-11) pp. 4, 10. The prison responded to the first grievance on July 7 and the second grievance on August 11.[4] *Id.* Petty did not appeal either grievance. *Id.* Petty's failure to appeal is fatal to his claims here. Petty argues that he attempted to send a letter to Sheriff Heath Taylor on July 9, 2021, asking for help, but that Sergeant Paul Weatherly stopped it. (Doc. 47) p. 2. Even if this is true, a letter to the sheriff is not a proper appeal. Russell County's grievance procedure provides that an appeal must be sent to the Assistant Detention Director within 15 days of the first response. (Doc. 38-16) p. 12. After initiating an appeal with the Assistant Detention Director, a dissatisfied prisoner may continue to send his appeal through the chain of command to the sheriff for final disposition. *Id*. Because Petty never filed an appeal of either grievance with the Assistant Detention Director, he has not properly exhausted his available administrative remedies, and his claims are due to be dismissed.

### B. Eighth Amendment Excessive Force

Petty brings an excessive force claim against Officer Stanley. (Doc. 17) pp. 2, 4. Convicted prisoners' excessive force claims are governed by the Eighth Amendment's

---

[4] Petty filed all four of his lawsuits prior to receiving the response to his second grievance. His second, third and fourth lawsuits were filed after receiving the response to his initial grievance.

cruel and unusual punishments clause. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). A prisoner must show "the unnecessary and wanton infliction of pain" to prevail. *Id.* (internal quotes and citation omitted). Prison guards may use force to keep order, but they must balance the force needed to maintain or restore discipline with the risk of injury to inmates. *Id.* at 6. The Supreme Court recognizes that breaches in discipline may require guards "to act quickly and decisively" without time for careful deliberation and "'the luxury of a second chance.'" *Id.* at 6 (*quoting Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Therefore, prison officials "'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional authority.'" *Hudson*, 503 U.S. at 6 (*quoting Whitley*, 475 U.S. at 321-322)

The core judicial inquiry on an Eighth Amendment excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7; *see also Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (holding same). Stated another way, could the guard's use of force "plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness" to inflict injury and pain. *Hudson*, 503 U.S. at 7 (internal quotes and citation omitted). In determining whether the use of force was justified or wanton and unnecessary, the court may consider (1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably

9

perceived by the guard; (4) any efforts made to temper the severity of the force; and (5) the extent of injury suffered by the inmate. *Id.* at 7. In the Eleventh Circuit, qualified immunity is not available as a defense to an Eighth Amendment excessive force claim because it requires that force be used "maliciously and sadistically to cause harm." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (internal quotes and citation omitted).

Here, the undisputed facts show that Petty was agitated about receiving a non-vegetarian meal and refused to turn in his tray. Stanley Decl. (Doc. 38-11) ¶¶ 5, 6; Amd. Compl. (Doc. 17) p. 3-4. Officer Stanley ordered Petty to exit his cell so he could retrieve the tray, and when he entered the cell, Petty suddenly rushed in behind him. *Id.* Officer Stanley was the only officer on duty in the pod at the time, and it was reasonable for him to believe that Petty was about to attack him. Stanley Decl. (Doc. 38-11) ¶ 6. The only question is whether the amount of force he used to defend himself and restore discipline was reasonably related to the threat he perceived.

Even accepting Petty's version of events that Officer Stanley punched him in the head, slung him to the bed, handcuffed him and dragged him from the cell, Officer Stanley could plausibly have thought this force necessary to gain control of an agitated inmate who rushed at him from behind while he was isolated in a cell.[5] Officer Stanley was faced with a split-second life or death situation, and he responded reasonably under the circumstances

---

[5] The only real difference between Petty's and Officer Stanley's version of events is that Petty claims Officer Stanley punched him in the head while Officer Stanley denies this. Compare Amd. Compl. (Doc. 17) p. 4 & Stanley Decl. (Doc. 38-11) ¶ 8. As is explained above, this is not a material dispute on an Eighth Amendment excessive force claim under the circumstances here.

to defend himself and restore discipline. A single punch to the head when an inmate rushes a guard from behind is insufficient to establish that force was applied wantonly, maliciously, and sadistically for the very purpose of causing harm in violation of the Eighth Amendment. *See Sanks v. Williams*, 2009 WL 1220621 *5 (S.D. Ga. 2009) (holding that prison guard justified in using single punch to regain control of situation). The other force Officer Stanley used was routine and appropriate to gain control of a noncompliant, agitated inmate. Accordingly, Petty's Eighth Amendment excessive force claim fails.

### C. Deliberate Indifference to Serious Medical Needs

Petty brings deliberate indifference to serious medical needs claims against Shift Sergeant Michael Thompson, Officer Reginald Logan, Corporal Jeremiah Shay, Officer Derrick Crawford, Officer Rashard Monigan, Corporal Brinson Harley, Shift Sergeant Shannon Johnson, Shift Sergeant William Hood, and Officer Roy Wright. (Doc. 17) pp. 2, 3, 4-5.

A prisoner's deliberate indifference claims are governed by the Eighth Amendment. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). To prevail on a deliberate indifference claim, a plaintiff must establish (1) an objective component, (2) a subjective component, and (3) causation. *Id.* The objective component requires a plaintiff to show that he had a serious medical need. A medical need is serious enough to satisfy this component if it has been diagnosed by a physician as mandating treatment or "'is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention.'" *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).

Petty alleges that following the cell extraction by Officer Stanley, his back and side hurt, and he had a big knot on his head. (Doc. 17) pp. 5, 6. Video of the cell extraction shows that Petty was not bleeding or in any obvious medical crisis following his removal from the cell. Defs.' Ex. L, Video, Camera 5, 7/03/2021 at 17:18-17:20. He was seen in medical by Nurse Jordan on July 7, 2021, and she noted some yellow bruising on his mid back and prescribed ibuprofen. (Doc. 38-14) p. 8. No mandatory treatment was required, and she did not send him for further treatment by a physician. *Id.* A radiology report dated July 14, 2021, showed no acute fracture or dislocation and noted that soft tissues are unremarkable. (Doc. 38-14) p. 16. The injuries Petty complained of would not cause a layperson to believe that he had an urgent need for a doctor's attention. Accordingly, Petty has failed to establish the objective component of his deliberate indifference claim.

Next, the subjective component requires Petty to show that the officers acted with deliberate indifference to his serious medical needs. To do this, Petty "'must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.'" *Goebert*, 510 F.3d at 1326-27 (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)). Whether an officer had subjective knowledge of a risk of serious harm and whether he consciously disregarded that risk are both fact questions on which Petty bears the burden of proof. *Goebert*, 510 F.3d at 1326.

There is no evidence in the summary judgment record showing that any of the named corrections officers believed that Petty was seriously injured and consciously disregarded that risk. Rather, the record shows that Petty was seen in medical by a nurse on July 7, and did not require any treatment beyond ibuprofen. Accordingly, Petty has not established the subjective or objective components of his deliberate indifference claim, and defendants are entitled to summary judgment on that count.

### D. Denial of Religiously Appropriate Meals

Finally, Petty brings a claim against Officer Stanley for denial of religiously required vegetarian meals. Amd. Compl. (Doc. 17) p. 3. To state a claim under the First Amendment's Free Exercise Clause, a plaintiff must plead facts showing a substantial burden on a sincerely held religious belief. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989), *Watts v. Fla. Int'l Univ.* 495 F.3d 1289, 1294 (11th Cir. 2007). A substantial burden is something more than an incidental effect or inconvenience. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2007).

Here, Petty complains about receiving one non-vegetarian meal on July 3, 2021. One meal on a single day is hardly a substantial burden. Moreover, Petty does not even identify his sincerely held religious belief that requires a vegetarian diet. Accordingly, Petty has failed to establish a Free Exercise Clause claim, and that count is due to be dismissed.

### VII. CONCLUSION

For the above-stated reasons, the Magistrate Judge RECOMMENDS that Defendants' motion to dismiss and for summary judgement (Doc. 38) be GRANTED and that JUDGMENT be entered in FAVOR OF DEFENDANTS on all claims. It is further

ORDERED that the parties shall file any objections to this Recommendation on or before September 17, 2024. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 3rd day of September, 2024.

/s/ Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE